No. 26-_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

CHRISTOPHER CALISE and ANASTASIA GROSCHEN, Individually and on Behalf of All Others Similarly Situated,

*Plaintiffs-Respondents*,

v.

META PLATFORMS, INC.,

*Defendant-Petitioner*.

On Petition for Permission to Appeal
an Order of the United States District Court for the
Northern District of California
Case No. 4:21-cv-06186
The Honorable Jeffrey S. White

# META PLATFORMS, INC.'S PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(B)


ERIN MARIE CHOI
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
214.698.3100

CHRISTOPHER CHORBA
SAMUEL ECKMAN
JEREMY WEESE
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
213.229.7000

*Attorneys for Defendant-Petitioner*
*META PLATFORMS, INC.*

## CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned states that Defendant-Petitioner META PLATFORMS, INC. is a publicly traded corporation with no parent corporation, and no publicly traded corporation owns more than 10% of its stock.

Dated: January 16, 2026

Respectfully submitted,

*/s/ Christopher Chorba*

Christopher Chorba

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1
QUESTIONS PRESENTED ........ 3
STATEMENT OF THE CASE ........ 4
ARGUMENT ........ 8
I. The District Court's Order Involves Controlling Questions of Law. ........ 9
II. There Is Substantial Ground for Difference of Opinion. ........ 12
III. Immediate Review Will Materially Advance This Litigation. ........ 18
CONCLUSION ........ 21
CERTIFICATE OF COMPLIANCE ........ 23
CERTIFICATE OF SERVICE ........ 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aellis O. v. Connor*,
2022 WL 2229421 (S.D. Cal. June 21, 2022) .......... 20

*Appling v. State Farm Mut. Auto. Ins. Co.*,
340 F.3d 769 (9th Cir. 2003) .......... 10

*Atel Fin. Corp. v. Quaker Coal Co.*,
321 F.3d 924 (9th Cir. 2003) .......... 9

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. June 21, 2019) .......... 7, 16, 17

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) .......... 1, 4, 5

*Canyon Vineyard Ests. I, LLC v. DeJoria*,
78 Cal. App. 5th 995 (2022) .......... 9

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) .......... 5, 14

*Caraccioli v. Facebook, Inc.*,
700 F. App'x 588 (9th Cir. 2017) .......... 2, 15, 17

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371 (1990) .......... 19

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
226 Cal. App. 4th 74 (2014) .......... 9

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) .......... 10, 18

*Damner v. Facebook Inc.*,
2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) .......... 19

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000) .......... 10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022)....................12, 18

*Kennedy v. Meta Platforms Inc.*,
2024 WL 4565091 (N.D. Cal. Oct. 23, 2024)....................16

*Kidstar v. Facebook Inc.*,
2021 WL 1110227 (N.D. Cal. Mar. 23, 2021)....................16

*King v. Facebook, Inc.*,
2019 WL 6493968 (N.D. Cal. Dec. 3, 2019)....................5, 13, 14

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014)....................15

*Lange v. Monster Energy Co.*,
46 Cal. App. 5th 436 (2020)....................9

*Long v. Dorset*,
369 F. Supp. 3d 939 (N.D. Cal. 2019)....................5, 13

*Marin Storage & Trucking, Inc. v. Bruno Contracting & Engineering, Inc.*,
89 Cal. App. 4th 1042 (2001)....................9

*May v. Google LLC*,
2024 WL 4681604 (N.D. Cal. Nov. 4, 2024)....................17, 18

*Murphy v. Twitter, Inc.*,
60 Cal. App. 5th 12 (2021)....................18

*Pete v. Facebook Data Breach*,
2026 WL 32635 (N.D. Cal. Jan. 6, 2026)....................16

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011)....................8, 10, 12, 18, 20

*Rollins v. Dignity Health*,
2014 WL 6693891 (N.D. Cal. Nov. 26, 2014)....................12

*In re Tobacco Cases I*,
186 Cal. App. 4th 42 (2010)....................9

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Williams v. Atria Las Posas*,
24 Cal. App. 5th 1048 (2018)....................9

*Young v. Facebook, Inc.*,
2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)....................6, 15, 20

*Young v. Meta Platforms, Inc.*,
2025 WL 2930979 (N.D. Cal. Oct. 15, 2025)....................14

### Statutes

28 U.S.C. § 1292(b)....................3, 8, 21

47 U.S.C. § 230....................4

Cal. Civ. Code § 1670.5(a)....................9

### Treatises

16 Wright & Miller, *Federal Practice & Procedure* § 3930 (3d ed. June 2024 update)....................19

## INTRODUCTION

Plaintiffs seek to hold Meta Platforms, Inc. liable in tort and contract for allegedly deceptive third-party advertisements they viewed on the Facebook social networking website. Two years ago, this Court affirmed the District Court's dismissal of Plaintiffs' tort claims because those claims would require Meta "to actively vet and evaluate third-party ads." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024). But the Court remanded with respect to Plaintiffs' contract claims, reasoning that "whether Meta's [Terms of Service ('TOS')] create an enforceable contract" and whether the TOS contains a "promise to moderate third-party advertisements" "are questions better suited for the district court in the first instance." *Id.* at 743 & n.5.

To remove any doubt as to whether the TOS imposes binding obligations on Meta to moderate third-party ads, there is an express Limitation of Liability Clause confirming that Meta "do[es] not control or direct what people and others do or say, and [is] ***not responsible for . . . any content they share*** (including offensive, inappropriate, obscene, unlawful, and other objectionable content)." Dkt. 56-2 at 11 (emphasis added). Notwithstanding this language, the District Court on remand ruled that Plaintiffs sufficiently alleged a claim for breach of contract because Meta's TOS and Community Standards (which are incorporated into the TOS) contain "unambiguous and well-defined promises from Meta to users" that "manifest

[Meta's] intent to be legally obligated to take appropriate action to combat scam advertisements." App. 6 (cleaned up). And although the District Court acknowledged that this interpretation of the TOS was in tension with the Limitation of Liability Clause, it concluded that provision—which, as relevant here, governs Meta's potential liability to every Facebook user in America—is "unconscionable" because it purportedly "seeks to avoid all liability for breach of [Meta's] promises" elsewhere in the TOS. App. 9.

Both conclusions independently warrant interlocutory review. As the District Court correctly observed, these contract interpretation questions are "controlling issues of law," and "reasonable jurists can and have actually disagreed on whether the TOS and Community Standards impose the asserted legal obligations on Meta," as well as whether the Limitation of Liability Clause is unconscionable. App. 15–16. In fact, at least four "other judges, within the same district, have approached the same legal question and construed it differently." App. 16. So, too, has this Court in an unpublished opinion: "The district court properly dismissed Caraccioli's breach of contract claim . . . because these claims are barred by Facebook's terms of service, which expressly disclaim Facebook's responsibility for the content published by third parties. We reject as without merit Caraccioli's argument that Facebook's terms of service are unconscionable." *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017).

The District Court further found that an interlocutory appellate "decision on the two questions of law will materially advance the ultimate termination of this litigation by resolving important threshold legal issues." App. 16. The alternative is to force the District Court and the parties into years of costly and burdensome litigation, which may all be for naught if this Court ultimately confirms in a postjudgment appeal its earlier ruling in *Caraccioli* that Meta's TOS does not impose on Meta affirmative obligations to police third-party content on Facebook. And such an interlocutory decision will not only "speed the end of this litigation [but] perhaps aid in similar litigation over Meta's TOS and Community Standards," as well. App. 17. Indeed, by resolving the legal meaning of Meta's TOS, this Court will aid the lower courts that have reached conflicting determinations on the construction of the TOS in the many cases brought against Meta in this Circuit. It will also provide needed guidance for cases involving other online sites with similar terms of service.

In the words of the District Court, "securing appellate clarity on interlocutory appeal is in the interests of the parties and this Court." App. 17. For these reasons, Meta respectfully requests that the Court grant its petition for permission to appeal under 28 U.S.C. § 1292(b).

## QUESTIONS PRESENTED

The District Court certified two questions for interlocutory review: (1) whether Meta's TOS and Community Standards impose an affirmative

obligation on Meta to combat purported scam advertisements, and (2) whether the Limitation of Liability Clause in Meta's TOS is unconscionable. App. 14.

## STATEMENT OF THE CASE

As this Court described, Meta "sells targeted ads to third parties" and "[t]hese third parties then post their ads on Meta's platform, promoting their products and services to Meta's users." *Calise*, 103 F.4th at 736. Plaintiffs are Facebook users who claim they were defrauded by third-party advertisements on Facebook for products that they purchased from independent companies' websites but either did not receive or did not receive in the condition advertised. *See id.* at 737; Dkt. 1. Rather than sue the people who created the allegedly fraudulent ads, Plaintiffs decided to sue Meta, asserting claims for (1) negligence, (2) breach of contract, (3) breach of the covenant of good faith and fair dealing, (4) violations of the Unfair Competition Law, and (5) unjust enrichment. Dkt. 1.

In 2022, the District Court granted Meta's motion to dismiss under Section 230 of the Communications Decency Act, 47 U.S.C. § 230, ruling that "Meta is entitled to CDA immunity as to each of Plaintiffs' claims." Dkt. 42 at 6. This Court affirmed in substantial part, holding that Section 230 bars Plaintiffs' claims for negligence, violation of the Unfair Competition Law, and unjust enrichment because those claims would require Meta "to actively vet and evaluate third-party ads." *Calise*, 103 F.4th at 744, 746. But the Court vacated with respect

to Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing, reasoning that, "[t]o the extent that Meta manifested its intent to be legally obligated to 'take appropriate action' to combat scam advertisements," such a "promise to moderate third-party advertisements is unrelated to Meta's publisher status" and thus fell outside the scope of Section 230. *Id.* at 743. At the same time, the Court declined to reach the issue of whether Meta did in fact "manifest[] its intent to be legally obligated" to "moderate third-party advertisements" because that was "not a question the district court reached." *Id.* at 743 & n.5. The Court instead remanded on the ground that "the existence of a contract and the interpretation of a contract are questions better suited for the district court in the first instance." *Id.* at 743 n.5.

On remand, the District Court dismissed Plaintiffs' newly pleaded failure to warn claim but denied the renewed motion to dismiss Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing. App. 13. The court acknowledged that "[t]he TOS open[s] with the following: 'These Terms govern ***your use*** of Facebook . . . except where we expressly state that separate terms (and not these) apply.'" *Id.* at 4 (quoting Dkt. 56-2 at 2) (emphasis added). It also acknowledged that at least three earlier decisions in the Northern District of California had relied on this language to "hold that the TOS do not create obligations for Meta." *Id.* at 5 (citing *Long v. Dorset*, 369 F. Supp. 3d 939, 948 (N.D. Cal.

2019); *King v. Facebook, Inc.*, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016)). But according to the District Court, those cases misread another case (*Young*) that "did not hold that the TOS do not create obligations for Meta" but rather "held that the provisions identified by the plaintiff [in that case] apply only to users, including agreements 'not to engage in bullying, intimidating, or harassing other users.'" *Id.* (quoting *Young v. Facebook, Inc.*, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010)).

By contrast, the District Court determined that "[t]he specific provisions which Plaintiffs claim Meta violated [here] are unambiguous and well-defined promises from Meta to users." App. 6. Those provisions include (1) Section 1 of the TOS, which states that "[i]f we learn of content or conduct [that is harmful toward others], we will take appropriate action—for example, offering help, removing content, removing or restricting access to certain features, disabling an account, or contacting law enforcement" (Dkt. 56-1 at 3), and (2) Section 5 of the Community Standards, which states that "[i]n an effort to prevent fraudulent activity that can harm people or businesses, we remove content that purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property" (Dkt. 56-5 at 1).

The District Court recognized that its interpretation of the TOS and Community Standards was in tension with the Limitation of Liability Clause, which unambiguously disclaims responsibility for third-party content:

> Our products, however, are provided 'as is,' and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections . . . . We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).

App. 6.

But rather than harmonize the purported promises with the unambiguous Limitation of Liability Clause—for example, by reading those "promises" as warnings to users of the potential consequences of violating the TOS, but not as a binding obligation to actively police third-party content—the District Court concluded that the Limitation of Liability Clause is "unconscionable" because "it seeks to avoid all liability for breach of any of [Meta's] promises relating to . . . known fraudulent content, or to otherwise cap damages at a level so low that no party would seek to vindicate its rights under the agreement." *Id.* at 9. Once again, the District Court "recognize[d] that another court in this district has reached the opposite conclusion." *Id.* But it determined that case was "distinguishable," because the plaintiffs there "proceeded on a theory of negligent conduct," whereas "[t]here is a greater degree of substantive unconscionability where the clause excludes

liability for intentional conduct." *Id.* (citing *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037–38 (N.D. Cal. 2019)).

Meta moved the District Court to certify its order for interlocutory appeal under 28 U.S.C. § 1292(b). On January 8, 2026, the District Court granted the motion, concluding that its order "satisfies all three criteria." App. 15. Specifically, "the questions posed by the request for interlocutory appeal here involve controlling issues of law" and "there is substantial ground for difference of opinion" on those questions, as evidenced by "[t]he fact that other judges, within the same district, have approached the same legal question and construed it differently." *Id.* at 15–16. The court then determined that interlocutory review would "materially advance the ultimate termination of this litigation by resolving important threshold legal issues" (*id.* at 16), and that "securing appellate clarity on interlocutory appeal is in the interests of the parties and this Court" (*id.* at 17).

## ARGUMENT

Section 1292(b) authorizes an interlocutory appeal if (1) the district court's order "involves a controlling question of law"; (2) "there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687–88 (9th Cir. 2011). The District Court correctly concluded all three criteria are met: (1) the questions presented are

controlling, purely legal questions that will not require any factual inquiry; (2) reasonable jurists might—and, in fact, *have*—differed on the proper resolution of the questions; and (3) an interlocutory appeal could lead to the dismissal of this action.

## I. The District Court's Order Involves Controlling Questions of Law.

The District Court correctly held that each of the certified questions involves a pure question of law. App. 15. "Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003); *see also Canyon Vineyard Ests. I, LLC v. DeJoria*, 78 Cal. App. 5th 995, 1003 (2022) ("Contract interpretation is a question of law."); *In re Tobacco Cases I*, 186 Cal. App. 4th 42, 47 (2010) ("Contract interpretation presents a question of law which this court determines independently."). The same is true of whether the Limitation of Liability Clause is unconscionable. *See* Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract[.]"); *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 445 (2020) ("Unconscionability is ultimately a question of law[.]"); *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1055 (2001) ("Unconscionability is ultimately a question of law for the court."); *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 82

(2014) ("[U]nconscionability is a question of law we review de novo."); *Williams v. Atria Las Posas*, 24 Cal. App. 5th 1048, 1055 (2018) ("Whether an agreement is unconscionable presents a question of law which we review de novo.").

Each of these questions of law is also "controlling." A question of law is controlling if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). If this Court decides that the TOS and Community Standards do not impose the asserted obligations on Meta, then Plaintiffs' claim for breach of contract should be dismissed. This should also result in the dismissal of Plaintiffs' only other claim—for breach of the covenant of good faith and fair dealing—because "[t]he covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003) (quoting *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349–50 (2000)).[1]

[1] Plaintiffs argued in the District Court that "survival of the Covenant Claim is not dependent on survival of the Contract Claim since the Covenant Claim is tied to intentional frustration of the purpose of provisions of the TOS and [Community Standards], not an actual breach of those provisions." Dkt. 81 at 12–13. But of course, if the TOS and Community Standards do not impose any affirmative obligation on Meta to police third-party content on Facebook, Meta could not have frustrated their purpose by declining to do so. And even if the claim for breach of the covenant of good faith and fair dealing could survive (it cannot), Section 1292(b) does not require that an interlocutory appeal "resolve all of [plaintiffs'] claims." *Reese*, 643 F.3d at 688.

These controlling questions of law are also well suited to interlocutory review. The fundamental question in this case is whether Meta can be held contractually liable for moderating (or not) content posted to Facebook by third parties. Given that there are hundreds of millions of Facebook users in the United States—and literally billions of pieces of content posted to the site every day—the answer to that question will have profound implications. As the disagreement among courts discussed below illustrates, the issue has repeatedly arisen in courts in this Circuit and will continue to do so.

And the implications of this Court's resolution of the question will not be confined to Meta. As NetChoice—a national trade association of online businesses—explained in an *amicus curiae* brief submitted in support of Meta's motion to certify, the District Court's order has "profound implications for websites" of all types by "plac[ing] [them] in the unenviable position of choosing between maintaining vague policies or inviting endless breach of contract claims that undermine . . . voluntary content moderation." Dkt. 74-1 at 1. This would not just hurt websites—it would "also hurt the user experience," as users will either "not have proper expectations about their participation on different websites" or else "websites may try to preemptively remove potentially problematic speech to avoid legal risks." *Id.* at 5.

## II. There Is Substantial Ground for Difference of Opinion.

The District Court also properly concluded that "there is substantial ground for difference of opinion on the questions of law presented." App. 15. The "substantial ground" standard does not set a high bar—the matter need only be "uncertain[]" and one "over which reasonable judges might differ." *Reese*, 643 F.3d at 688 (quotation marks omitted). If "reasonable jurists *might* disagree on an issue's resolution," a "substantial ground for difference of opinion exists" even if other cases do not "directly conflict[] with the district court's construction of the law." *Id.* (emphasis added); *see also ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130–31 (9th Cir. 2022) (holding that a "district court need not 'await[] development of contradictory precedent'" to rule that there are substantial grounds for difference of opinion).

Here, the Court need not engage in hypotheticals to determine whether reasonable jurists might disagree on the certified questions. As the District Court explained, "reasonable jurists can and *have actually disagreed*" on both issues. App. 16 (emphasis added). That satisfies the second requirement for Section 1292(b) review. *See Rollins v. Dignity Health*, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014) ("One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed."). These decisions have diverged on whether the TOS and Community Standards

create affirmative obligations binding on Meta, rather than just users, and whether the Limitation of Liability Clause is unconscionable.

**1.** ***Contractual obligations***. At least four district court decisions from within this Circuit—and one unpublished decision from this Court itself—have expressly rejected the argument that the TOS and Community Standards impose affirmative obligations on Meta.

In *Long v. Dorset*, 369 F. Supp. 3d 939 (N.D. Cal. 2019), the plaintiff alleged that Meta "failed to comply with certain obligations created by the ToS, including its promise to 'employ dedicated teams . . . and develop technical systems to detect misuse of their products, harmful conduct towards others, and situations where [Facebook] may be able to support [its] community.'" *Id.* at 948 (alterations in original). But the court dismissed that claim, reasoning that, "while Facebook's ToS 'place[s] restrictions on users' behavior,' it 'do[es] not create affirmative obligations.'" *Id.* (alterations in original). The court further reasoned that the Limitation of Liability Clause "disclaimed the type of harm plaintiff alleges here" by stating that the "service [is] provided 'as is,'" with "'no guarantees' about 'secur[ity]'" and Meta is "'not responsible for [third-party] actions.'" *Id.* at 949 (some alterations added).

Similarly, the plaintiff in *King v. Facebook, Inc.*, 2019 WL 6493968 (N.D. Cal. Dec. 3, 2019), alleged that Facebook breached its contract with him when it

allegedly blocked his content in retaliation for suing Facebook. *Id.* at *1. The court dismissed the claim, explaining that, insofar as "the contractual basis for King's breach claim is the Terms of Use (Terms) which Facebook requires users to agree to, the claim lacks merit" because "while Facebook's Terms 'place restrictions on users' behavior,' they 'do not create affirmative obligations' on Facebook." *Id.* at *2.

The same result occurred in *Young v. Meta Platforms, Inc.*, 2025 WL 2930979 (N.D. Cal. Oct. 15, 2025). There, the district court rejected a breach-of-contract claim based on a third-party hack of the plaintiff's Facebook page on the ground that the Limitation of Liability Clause "explicitly (1) disclaim[s] any guarantee that Facebook will be safe, secure, or error-free, or operate without disruptions; and (2) disclaim[s] liability for third-party acts or conduct." *Id.* at *3.

And in *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016), the plaintiff alleged that Facebook breached the TOS and Community Standards by failing to remove sexually explicit material that was posted to the website by an anonymous user. *Id.* at 1060–62. As in the cases discussed above, the district court concluded that the plaintiff "cannot base these claims on the Terms of Service" because, "while Facebook's Terms of Service 'place restrictions on users' behavior,' they 'do not create affirmative obligations.'" *Id.* at 1064.

*Caraccioli* presented the first opportunity for this Court to consider Meta's potential liability under the TOS. In a memorandum disposition issued by then–Chief Judge Thomas, Judge Silverman, and Judge Rawlinson, the Court affirmed the district court's decision in full, explaining that "[t]he district court properly dismissed Caraccioli's breach of contract claim and UCL claim, to the extent it was premised on an alleged breach of contract, because these claims are barred by Facebook's terms of service, which expressly disclaim Facebook's responsibility for the content published by third parties." 700 F. App'x at 590.

Courts outside the Ninth Circuit are in accord. In *Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014), the D.C. Circuit rejected the plaintiff's attempt to evade Section 230 by recharacterizing his claim that Facebook failed to remove a page inciting violence against Jews as a "breach of [Facebook's] duties arising from . . . their contractual relationship and contractual obligations" because the Limitation of Liability Clause contains an "express warning that 'FACEBOOK IS NOT RESPONSIBLE FOR THE ACTIONS, CONTENT, INFORMATION, OR DATA OF THIRD PARTIES,'" thereby "disavow[ing] the legal relationship that [the plaintiff] asserts." *Id.* at 1356–59.

Although the District Court agreed that these decisions established "substantial ground" for differences of opinion for purposes of Section 1292(b), its motion to dismiss ruling set aside this line of authority on the basis that each case

turned on a misreading of *Young v. Facebook, Inc.*, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010), which did not "categorically determine[] that the TOS include no promises by Meta" but rather "held that the provisions identified by the plaintiff [*in that case*] appl[ied] only to users." App. 5 (emphasis added). Even if that were a plausible reading of *Young v. Facebook*, it is not the reading adopted by its progeny. And the fact that those subsequent cases have read that precedent differently is all that is required to establish a "substantial ground for difference of opinion."[2]

**2. *Unconscionability*.** Whether the Limitation of Liability Clause is unconscionable as a matter of California law has also already produced a difference of opinion, as the district court observed. App. 9 (noting that "another court in this district has reached the opposite conclusion" on this issue).

[2] Additionally, several cases from within this Circuit have held that the Limitation of Liability Clause precludes claims like those asserted here without relying on *Young v. Facebook*. *See, e.g.*, *Pete v. Facebook Data Breach*, 2026 WL 32635, at *2 (N.D. Cal. Jan. 6, 2026) (dismissing claim for breach of the TOS because "Pete's claims are all based on alleged third-party acts, and . . . his claimed damages fall within the Terms of Service's limitations on liability"); *Kennedy v. Meta Platforms Inc.*, 2024 WL 4565091, at *3 (N.D. Cal. Oct. 23, 2024) (dismissing claim that Meta "violated its own Terms of Service by 'not adequately protecting Plaintiffs' private information' and 'failing to provide a secure system'" because they are "precluded by the Terms of Service"); *Kidstar v. Facebook Inc.*, 2021 WL 1110227, at *2 (N.D. Cal. Mar. 23, 2021) ("All of Plaintiff's claims were premised on his allegation that Facebook promised, contracted, or represented that their Facebook platform is a safe community for consumers and that Defendants failed to keep Plaintiff's photographs safe. However, these allegations contradict Facebook's disclaimers in the [TOS].").

In *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019), the court began from the premise that "[t]he limitation-of-liability clause stops five alleged claims from moving forward," including "(i) breach of contract, (ii) implied contract, (iii) implied covenant of good faith and fair dealing, (iv) quasi-contract, and (v) breach of confidence." *Id.* at 1037. As a result, "the only way the breach of contract claims may move forward is if the limitation-of-liability clause is deemed unconscionable." *Id.* But the court concluded that it was not: "[T]he procedure followed by Facebook was fair. The clause was not buried. The clause was plainly above board and contained clear enough language. True, it is an adhesion contract, but there is no 'rule that an adhesion contract is per se unconscionable.' No one is forced to enroll in Facebook's social media service." *Id.* at 1038. Thus, the court dismissed "[t]he four breach-of-contract claims" and the "breach of confidence" claim. *Id.*

This Court agreed in *Caraccioli*. After concluding that the TOS "expressly disclaim[ed] Facebook's responsibility for the content published by third parties," the Court "reject[ed] as without merit Caraccioli's argument that Facebook's terms of service are unconscionable." 700 F. App'x at 590.

Reasonable jurists have also differed from the District Court's conclusion on the scope of the claimed substantive unconscionability when reviewing similar clauses in online terms of service. For example, in *May v. Google LLC*, 2024 WL

4681604 (N.D. Cal. Nov. 4, 2024), the court held that a provision that "disclaim[s] Google's liability against third-party misconduct" was not substantively unconscionable because, among other things, "the contract at issue involves access to a 'nonessential recreational activity' . . . and thus, the contract is not substantively unconscionable because 'the consumer always has the option of simply forgoing the activity.'" *Id.* at *7. And in *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12 (2021), the California Court of Appeal rejected the argument that "Twitter's liability waiver provision . . . [is] unconscionable," observing that courts have "recognized service providers that offer free services to Internet users may have a legitimate commercial need to limit their liability and have rejected claims that such limitations are so one-sided as to be substantively unconscionable." *Id.* at 35–36 (collecting cases).

## III. Immediate Review Will Materially Advance This Litigation.

The District Court correctly determined that "interlocutory review will materially advance the current litigation." App. 16. Section 1292(b) does not require that an interlocutory appeal "have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688. As such, this prong is satisfied "when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Or., Inc.*, 22 F.4th at 1131 (quoting *In re Cement*, 673 F.2d at 1027).

Here, a resolution of the certified questions in Meta's favor would result in the dismissal of this lawsuit. Plaintiffs have not disputed that their contract claim would fail, and the only other claim they assert—for breach of the implied covenant of good faith and fair dealing—cannot survive without the contract claim. As the District Court explained, "[t]he covenant imposes an obligation on a contracting party to 'act fairly and in good faith in discharging *its contractual responsibilities*.'" App. 10 (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)) (emphasis added). If Meta does not have any contractual responsibilities under the TOS and Community Standards, it necessarily follows that it could not have acted in bad faith in "discharging" those non-existent responsibilities. That is why, after concluding that the TOS did not obligate Meta to protect Facebook users' personal information in *Damner*, the court proceeded to dismiss the plaintiff's claim for breach of the implied covenant on the ground that "a claim for breach of the covenant of good faith cannot impose substantive duties not found in the underlying contract." *Damner v. Facebook Inc.*, 2020 WL 7862706, at *7 (N.D. Cal. Dec. 31, 2020).

Resolution of the certified questions now would thus save the parties and the District Court from the significant burden of discovery and a potential trial on the remaining issues. This alone satisfies this third criterion and warrants interlocutory review. *See* 16 Wright & Miller, *Federal Practice & Procedure* § 3930 (3d ed. June

2024 update) (noting that certification is appropriate for questions "that offe[r] an opportunity to terminate the litigation completely, and that may spare the parties the burden of a trial").

But even a ruling for Plaintiffs on the certified questions would still warrant an interlocutory appeal, because "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688. A ruling for Plaintiffs would materially advance the ultimate termination of this litigation by resolving an important threshold legal question. As the District Court observed, even if this Court were to affirm the District Court's order, that result "will allow the parties to be more informed in their assessment of whether they might prevail" and "would facilitate settlement discussions." App. 16.

And looking beyond this litigation, an interlocutory appeal could facilitate the resolution of other cases involving alleged breaches of Meta's TOS and Community Standards—as well as similar terms issued by other companies, which courts have found not to impose affirmative obligations based on the same authorities discussed above. *See, e.g.*, *Aellis O. v. Connor*, 2022 WL 2229421, at *7 (S.D. Cal. June 21, 2022) ("Even if Plaintiff had identified a specific provision of the Terms of Service that Google allegedly breached, however, the Court would still find that Plaintiff failed to state a claim for breach of contract against Google. Other courts examining

websites' terms of service have found that, 'while these provisions place restrictions on users' behavior, they do not create affirmative obligations.'" (quoting *Young*, 2010 WL 4269304, at *3)). Indeed, the District Court recognized that an appeal of the certified questions could "perhaps aid in similar litigation over Meta's TOS and Community Standards." App. 17.

As the District Court concluded, "securing appellate clarity on interlocutory appeal is in the interests of the parties and this Court." *Id.* And it is far superior to the alternative—deferring appeal of this central issue until after final judgment, which could render years of work by the District Court and parties wasted.

## CONCLUSION

The certified questions both present controlling questions of law on which reasonable jurists can—and have—disagreed. And resolution of those questions now rather than after a final judgment is issued would materially advance the ultimate termination of this litigation. As a result, the Court should grant Meta's petition for permission to appeal under 28 U.S.C. § 1292(b).

Dated: January 16, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: *\/s/ Christopher Chorba*
Christopher Chorba

*Attorneys for Defendant-Petitioner*
*META PLATFORMS, INC.*

## CERTIFICATE OF COMPLIANCE

I certify that under Federal Rule of Appellate Procedure 32(a)(7)(B) and Ninth Circuit Rule 32-1, this brief is proportionately spaced, has a typeface of 14 points, and contains 5,098 words, excluding the portions excepted by Federal Rule of Appellate Procedure 32(f), according to the word-count feature of Microsoft Word, which was used to generate this brief.

Dated: January 16, 2026

/s/ *Christopher Chorba*
Christopher Chorba

## CERTIFICATE OF SERVICE

Under Federal Rule of Appellate Procedure 25(d), I certify that on this 16th day of January 2026, the foregoing brief was electronically filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system. Service was accomplished on all registered CM/ECF users.

Dated: January 16, 2026

/s/ *Christopher Chorba*
Christopher Chorba

# Appendix

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER CALISE, et al.,
Plaintiffs,
v.
META PLATFORMS, INC.,
Defendant.

Case No. 21-cv-06186-JSW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS**

Re: Dkt. No. 57

Now before the Court for consideration is the motion to dismiss the First Amended Complaint ("FAC") filed by Defendant Meta Platforms, Inc. The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Meta's motion.

## BACKGROUND

### A. Allegations in the FAC.

Plaintiffs Christopher Calise, Terri Bohl, and Noah Faerber allege Meta actively solicits, encourages, and assists scam advertisers and Meta knows, or should know, that the scammers use its platform to defraud users with deceptive ads. (FAC ¶ 1.)

Meta operates Facebook, a social networking service that allows people to connect and communicate with friends, colleagues, family, and others. (*Id.* ¶¶ 23-24.) Meta does not charge users for their accounts and instead generates revenue from advertisements. (*Id.* ¶ 25.) Meta allows advertisers to run targeted ad campaigns on the platform. (*Id.* ¶ 27.)

Facebook's Terms of Service ("TOS") provide certain promises regarding content moderation on the site. In relevant part, Facebook promises that if it "detect[s] misuse of [its]

Products, harmful conduct towards others, and situations where [Facebook] may be able to help support or protect [its] community," it "will take appropriate action – for example, offering help, removing content, removing, or restricting access to certain features, disabling an account, or contacting law enforcement." (*Id.* ¶ 32.) In return, Facebook requires users to promise not to share any content "[t]hate is unlawful, misleading, discriminatory, or fraudulent." (*Id.* ¶ 33.) Facebook further states in its Community Standards ("COS") that it will "remove content that purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property." (*Id.* ¶ 34.)

Plaintiffs are Facebook users who saw third-party advertisements on Facebook and purchased the advertised products from third-party websites. Plaintiff Calise saw an advertisement on Facebook for a car engine assembly kit. (*Id.* ¶ 73.) Calise followed the advertisement to a website with the domain name "miuxo.com" where he purchased the kit. (*Id.* ¶ 74.) Calise subsequently attempted to contact Miuxo for updates on the status of his order. (*Id.* ¶ 75.) Miuxo did not respond, and Calise never received the kit or a refund. (*Id.*) Calise reported Miuxo's advertisement to Facebook, which determined the advertisement violated its ad polices and would be removed. (*Id.* ¶ 77.) Calise alleges, however, that Miuxo launched a new Facebook advertisement under a slightly modified name, which scammed additional Facebook users. (*Id.* ¶¶ 77-78.)

Plaintiff Bohl saw an advertisement on Facebook for a "Nightmare Before Christmas" cuckoo clock. (*Id.* ¶ 84.) She followed the advertisement to a website which appeared legitimate and which claimed the product was officially licensed by Disney. (*Id.*) She then placed an order for the clock using her PayPal account and paid a total of $41.98. (*Id.* ¶ 85.) Bohl received a package containing a "cheap facsimile" of the clock, which appeared unfinished and was significantly smaller than the clock she had ordered. (*Id.* ¶ 86.) Bohl wrote to the vendor who offered a $5 refund. (*Id.* ¶ 87.) Bohl escalated the issue with PayPal, and the vendor offered a full refund if Bohl would ship the item back—at a cost of $80 to Bohl. (*Id.* ¶ 90.) Bohl reported the incident to the FTC. (*Id.* ¶ 92.)

Plaintiff Faerber saw an advertisement on Facebook Marketplace for a car swap. (*Id.* ¶

95.) Faerber agreed to trade his Mazda Miata for a man named Kyle's Toyota MR2. (*Id.* ¶ 97.) Faerber and Kyle exchanged papers and keys. (*Id.*) That same night, Kyle stole the Toyota MR2, leaving Faerber without either car. (*Id.* ¶ 98.) Kyle posted about the theft on Facebook. (*Id.* ¶ 99.) Faerber reported Kyle to the police and Facebook, and he subsequently learned that Kyle repeatedly executes the same scheme. (*Id.* ¶¶ 100-101.) Facebook does not act to stop Kyle or warn others who deal with him. (*Id.* ¶ 101.)

**B. Procedural History.**

Plaintiffs filed their original complaint in August 2021. (Dkt. No. 1, Compl.) Plaintiffs brought causes of action for: (1) negligence; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code section 17200, *et seq*. ("UCL"); and (5) unjust enrichment. (*See id.*)

The Court granted Meta's motion to dismiss the original complaint on the basis that Section 230(c)(1) of the Communications Decency Act ("CDA") bars Plaintiffs' claims. (Dkt. No. 42, Dismissal Order.) On appeal, the Ninth Circuit affirmed in part and reversed in part. (Dkt. No. 47, 9th Cir. Op.)

The Ninth Circuit held that the Court correctly applied Section 230 to dismiss Plaintiffs' negligence, UCL, and unjust enrichment claims. However, the Court reversed as to Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing, ruling:

> To the extent that Meta manifested its intent to be legally obligated to "take appropriate action" to combat scam advertisements, it became bound by a contractual duty separate from its status as a publisher. We thus hold that Meta's duty arising from its promise to moderate third-party advertisements is unrelated to Meta's publisher status, and § 230(c)(1) does not apply to Plaintiffs' contract claims.

(*Id.* at 18-19); *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 743 (9th Cir. 2024). The court further recognized that this Court had not evaluated the validity of the TOS as a contract, and it held that "[t]he existence of a contract and the interpretation of a contract are questions better suited for the district court in the first instance." *Id.*

Plaintiffs filed the FAC after remand. They now bring three causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) negligent failure to

United States District Court
Northern District of California

warn.

## ANALYSIS

### A. Applicable Legal Standard.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

### B. Plaintiffs Sufficiently Allege Breach of Contract.

Meta moves to dismiss the contract-based claim on two bases. First, Meta argues that the Facebook TOS do not create enforceable promises from Meta. Second, Meta claims that even if the TOS create obligations for Meta, Plaintiffs do not plausibly allege breach.

#### 1. The TOS and COS Create Obligations for Meta.

Meta first argues that the TOS do not create affirmative obligations for Meta because they include language regarding users' conduct. The TOS open with the following:

> These Terms govern your use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software we offer. . . except where we expressly state that separate terms (and not these) apply. These Products are provided to you by Meta Platforms, Inc.

(Dkt. No. 56-2, FAC Ex. B, TOS, at 3.) According to Meta, because the language provides that the terms govern "your use," the TOS apply only to the user and not Meta. For that proposition, Meta cites three cases from this district: *Long v. Dorset*, 369 F. Supp. 3d 939, 948 (N.D. Cal. 2019), *aff'd,* 854 F. App'x 861 (9th Cir. 2021), and *vacated in part,* No. 17-cv-02758-PJH, 2021 WL 7829668 (N.D. Cal. May 21, 2021); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd,* 700 F. App'x 588 (9th Cir. 2017); and *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019), *aff'd,* 845 F. App'x 691 (9th Cir. 2021).

The Court is not persuaded that *Long*, *Caraccioli*, or *King* categorically determined that the TOS include no promises by Meta. In *Long*, the district court interpreted Meta's promise to "take appropriate action"—the same provision relied upon by Plaintiffs here—to impose a duty upon Facebook to act within a "reasonable time." *Long*, 369 F. Supp. 3d at 948. This finding is contradicted in the next paragraph by the court's reliance, without discussion, on *Caraccioli* to hold that the TOS do not create obligations for Meta. *Id.* at 948-49. *Caraccioli* in turn relies without discussion on *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010). *King*, too, cites *Caraccioli* and *Young* without analysis. *Young*, however, did not hold that the TOS do not create obligations for Meta. Instead, it held that the provisions identified by the plaintiff apply only to users, including agreements "not to engage in bullying, intimidating, or harassing other users." *Young*, 2010 WL 4269304, at *3. By their plain language, the terms at issue in *Young* apply to users and do not imply promises by Meta.

Meta seeks to extrapolate too general a ruling from these decisions. The Court disagrees that the TOS's introductory language clearly limits obligations to users. At best, that intention is unclear, and the language is ambiguous, particularly in light of the mutual promises contained within the TOS. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019) (noting Meta's agreement that, "if the contract language at issue is reasonably susceptible to more than one interpretation," resolution at motion to dismiss stage is inappropriate). A user who chooses to read the TOS may understand from the introduction that she is bound by the agreement without forming an understanding that Meta excludes itself from

United States District Court
Northern District of California

the TOS's language.

The specific provisions which Plaintiffs claim Meta violated are unambiguous and well-defined promises from Meta to users. In the TOS, Meta promises to "take appropriate action – for example, offering help, removing content, removing, or restricting access to certain features, disabling an account, or contacting law enforcement." (FAC ¶ 32.) In the COS, Meta promises to "remove content that purposefully deceives, willfully misrepresents or otherwise defrauds or exploits others for money or property." (*Id.* ¶ 34.) These promises "manifest[] its intent to be legally obligated to 'take appropriate action' to combat scam advertisements." *Calise*, 103 F.4th at 743; *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023), *motion to certify appeal denied,* No. 22-CV-03580-WHO, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (following the Ninth Circuit's suggestion in this case to hold that, at the motion to dismiss stage, "Plaintiffs' specific references to identified provisions in Meta's TOS and Privacy Policy [we]re sufficiently definite"). The ambiguous introductory language does not negate these promises.

Meta next argues that the TOS do not create affirmative obligations because they include a disclaimer. Through the following, Meta argues, it is shielded from liability relating to third-party conduct:

> We work hard to provide the best Products we can and to specify clear guidelines for everyone who uses them. Our Products, however, are provided "as is," and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections. To the extent permitted by law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).
>
> We cannot predict when issues might arise with our Products. Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and under no circumstance will we be liable to you for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Meta Products (however caused and on any theory of liability, including negligence), even if we have been advised of the possibility of such damages. Our aggregate liability arising out of or relating to these Terms or the Meta Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

United States District Court
Northern District of California

(TOS, § 4.3.) Plaintiffs respond (1) that the disclaimer limits, rather than eliminates, liability; (2) that it is void as contradicting express promises; (3) that it is void under California Civil Code section 1668; and (4) that it is substantively and procedurally unconscionable. The Court addresses these arguments out of order.

First, the warranty portion of the disclaimer does not apply to Plaintiffs' claims. Plaintiffs do not allege breach of warranty regarding Facebook as a product. They do not claim that Facebook is unmerchantable or that it is not fit for its promised purpose of connecting people to each other. Further, the relevant alleged promises are separate from Meta's cautionary language that it does not control third-party actions on its platform. In other words, while Facebook disclaims responsibility for third-party conduct, it maintains responsibility for its own promise to "take appropriate action" to combat scam advertisements and to do so in good faith. Starting with this understanding, the Court finds the disclaimer is not void by reason of contradicting express warranties.

Second, the Court agrees that the $100 liability cap applies to Plaintiffs' claims unless it is found unenforceable. Meta argues that the $100 liability cap applies only when the broader release from the previous paragraph is not applicable. It claims that, rather than acting as a shield to liability, the portion of the disclaimer which addresses third-party conduct sets the outer bounds of Meta's promises to users. Only where the disclaimer does not apply, or where it is found unenforceable, does the $100 liability cap come into play. Because the Court finds that the warranty disclaimer does not apply to Plaintiffs' claims, and that the alleged promises are outside the scope of the third-party conduct disclaimer, the $100 cap applies unless the provision is unconscionable.

Third, Section 1668 does not apply to void the disclaimer. Section 1668 provides:

> All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

Cal. Civ. Code § 1668. Plaintiffs' argument that the plain language of this statute prohibits Facebook from immunizing itself against contract damages is foreclosed by a recent decision from

the California Supreme Court. In *New England Country Foods, LLC v. VanLaw Food Prods., Inc.*, 17 Cal.5th 703 (2025), the court addressed a "limitation on liability" clause which disclaimed liability for loss of profits and other special, incidental, and consequential damages; capped liability at the amount of gross revenue from the parties' products; and excluded punitive damages under any theory. *Id.* at 708. The court first confirmed that parties cannot release claims for future willful tortious conduct. *Id.* The California Supreme Court then clarified that the statute does not extend to "pure breaches of contract absent a violation of an independent duty that falls within the ambit of section 1668." *Id.* at 717. If the claim involves only a breach of "contractual obligations," then "releases are governed by contract principles such as unconscionability." *Id.* Section 1668 thus does not apply to Meta's disclaimer and liability cap as relates to Plaintiffs' contract claim.

Fourth, the Court finds the limitation of liability clause to be unconscionable. Unconscionability has a procedural and substantive component. "[T]here is a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 910 (2015)).

Plaintiffs argue that the contracts have the requisite degree of procedural unconscionability because the TOS and COS are contracts of adhesion. Contracts of adhesion necessarily indicate "some degree of procedural unconscionability." *Id.*

Plaintiffs also argue that the clause is substantively unconscionable because of the disparity in the "investigative, financial, and technical resources to . . . crack down on scam ads appearing on Facebook." (Opp'n, at 5.) By including a clause with which Meta attempts to circumvent liability entirely, it can forego keeping its promises and benefit from millions of dollars in revenue from known scam advertisements. Plaintiffs also argue that the clause is substantively unconscionable because of enormous societal pressures to participate in Facebook. Plaintiffs argue that Facebook is so interwoven into 21st-century life that it is effectively a public utility. (*Id.* at 6.)

In reply, Meta argues first that the clause lacks "more than de minimus" procedural unconscionability because it was not buried within a lengthy contract and its language is "clear enough." (Dkt. No. 61, Reply, at 7 (quoting *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038 (N.D. Cal. 2019)).) Meta also argues that the clause cannot be substantively unconscionable because disclaiming liability for third-party content is "consistent with the federal policy embedded in Section 230." (*Id.*)

The Court finds Plaintiffs' arguments more compelling. *De minimus* procedural unconscionability is sufficient where substantive unconscionability is great. Here, Meta does not seek to merely set forth the limits of its responsibilities in a manner consistent with Section 230: it seeks to avoid all liability for breach of any of its promises relating to promoting and benefiting from known fraudulent content, or to otherwise cap damages at a level so low that no party would seek to vindicate its rights under the agreement.

The Court recognizes that another court in this district has reached the opposite conclusion, albeit with regret. *Bass*, 394 F. Supp. 3d at 1037-38. *Bass* is distinguishable for several reasons. In that case, the court analyzed a different version of the disclaimer: the ruling notes that the clause "does not mention 'negligence' at all." *Id.* at 1038. The clause at issue here includes a reference to negligence. (*See* TOS, § 4.3 (limiting liability "however caused and on any theory of liability, including negligence").) Further, the plaintiffs in *Bass* proceeded on a theory of negligent conduct. The court noted that "Facebook's mere failure to discover the vulnerability might be barred by the clause, but if it had acquiesced to, or known of the vulnerability, the claim would certainly be allowed through." *Id.* There is a greater degree of substantive unconscionability where the clause excludes liability for intentional conduct. *Cf. Gerber v. Twitter, Inc.*, No. 4:23-cv-00186-KAW, 2024 WL 5173313, at *7 (N.D. Cal. Dec. 18, 2024) (finding limitation-of-liability clause unconscionable where Twitter attempted to use clause to avoid any liability for damages from known vulnerability); *Doe*, 690 F. Supp. 3d at 1085 (distinguishing *Bass* and declining to dismiss based upon limitation of liability clause because plaintiffs allege intentional conduct).

**2. Plaintiffs Adequately Allege Breach.**

Meta argues that Plaintiffs do not allege breach because they acknowledge that certain of the misleading ads were removed from Facebook. (*See* FAC ¶¶ 77, 96.) At this stage, however, Plaintiffs have plausibly alleged that Meta did not "take appropriate action" to combat scam ads: Plaintiffs allege that Meta actively courts scam advertisers, instructs its employees to ignore known scam accounts, and permits scammers to reopen accounts or repost ads after closure and takedowns. (*See id.* at ¶ 78.) These activities plausibly breach the promise to "take appropriate action."

The Court therefore denies Meta's motion to dismiss this count.

**C. Plaintiffs Adequately Allege an Independent Claim for Breach of the Covenant of Good Faith and Fair Dealing.**

Meta argues that Plaintiff's claim for breach of the covenant of good faith and fair dealing must be dismissed because (1) the claim is duplicative of the breach of contract claim, and (2) Plaintiffs do not identify a specific contractual provision that was frustrated by the conduct alleged. Plaintiffs respond that their claim is not duplicative because Meta may have violated the covenant without violating the literal terms of the TOS, and they contend that they do sufficiently identify a specific contractual provision. The Court agrees with Plaintiffs.

The covenant imposes an obligation on a contracting party to "act fairly and in good faith in discharging its contractual responsibilities." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (quoting *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54 (1985)). A party can be liable for breach of the covenant "whether or not it[s conduct] also constitutes a breach of a consensual contract term[.]" *Id.* However, "[i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.*

The Court finds, in this case, Plaintiffs' claim for breach of the covenant is not duplicative of the breach of contract claim. Meta may have breached the covenant even if it complied with its promise to "take appropriate action" if its actions were taken with bad faith and intentionally

United States District Court
Northern District of California

enabled the scam content to continue.

The FAC alleges that Meta "frustrated and interfered with the rights of Plaintiffs and other members of the [putative classes] to the benefits of the TOS (including, without limitation, the right to a safe environment while using Facebook and the right to be protected against being scammed by deceptive ads)." (FAC ¶ 141.) It identifies specific promises in Section 1 of the TOS which Meta allegedly frustrated.

Accordingly, Plaintiff's claim for breach of the covenant of good faith and fair dealing may proceed.

**D. Plaintiffs' Claim for Negligent Failure to Warn Fails.**

Meta argues that Plaintiffs' failure to warn theory is not viable under the economic loss rule because Plaintiffs seek recovery in tort for purely financial harms. Plaintiffs respond that the economic loss rule does not apply because Meta has a special relationship with its users.

California's economic loss rule prohibits recovery in tort for "negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal.5th 905, 922 (2022). The rule applies "to bar claims in negligence for pure economic losses in deference to a contract between litigating parties," and it bars claims that "arise from—or are not independent of—the . . . underlying contracts." *Id.* at 922-23.

However, the rule does not apply to prevent tort recovery where the defendant breaches a duty which exists independently of the contract. *Erlich v. Menezes*, 21 Cal.4th 543, 552 (1999). This includes tort claims where breach of contract results in physical injury, breach of the covenant of good faith and fair dealing, wrongful discharge in violation of public policy, or where entry into the agreement was fraudulently induced or otherwise intended to cause harm. *Id.* at 551-52. California courts further recognize an exemption from the economic loss rule for "claims where a plaintiff who is not in contractual privity with a defendant seeks to recover purely economic losses for negligent performance of services under a contract" where a "special relationship" giving rise to a duty exists between the litigating parties. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1021 (N.D. Cal. 2024).

Plaintiffs argue that the "special relationship" exception is not limited to cases where the litigating parties are not in privity, citing *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1131-32 (N.D. Cal. 2018). Because Plaintiffs allege a special relationship with Meta, they contend the economic loss rule does not apply.

Meta, in turn, argues that *In re Yahoo!* precedes the California Supreme Court's ruling in *Sheen*. 12 Cal.5th at 922. In *Sheen*, the court held that the rule applies to bar claims which are "not independent of" the parties' contract. *Id.* Further, because Plaintiffs and Meta are in privity, the exception cannot apply.

The Court agrees with Meta. Plaintiffs cannot point to binding authority which harmonizes a plain-language reading of *Sheen* with their theory of an exception to the economic loss rule. In light of the California Supreme Court's pronounced reticence to extend exceptions to the economic loss rule beyond its historic confines, the Court will not extend the exception here. *See Erlich*, 21 Cal.4th at 553 (instructing courts to take a "cautious approach" to excepting tort claims from economic loss rule); *Sheen*, 12 Cal.5th at 929-30 (similar); *So. Cal. Gas Leak Cases*, 7 Cal.5th 391, 412 (2019) (recognizing unfairness of applying economic loss rule to prevent recovery after manmade disaster and stating decision to expand liability lies with legislature). Plaintiffs' theory of breach under their negligent failure to warn claim is coextensive with their theories under their claims for breach of contract and breach of the covenant of good faith and fair dealing; it is intertwined with and dependent upon the existence of the TOS.

Meta also argues that Section 230—which insulates providers of interactive computer services from liability as a publisher—bars this claim. 47 U.S.C. § 230(c)(1); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). "In general, this section protects websites from liability for material posted on the website by someone else." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016).

When considering this case on appeal, the Ninth Circuit distinguished between a provider's action as a publisher and its failure to warn where it has a duty. The panel reasoned, "[i]n *Internet Brands*, the platform faced liability not because it failed to remove the ads, but because it failed to warn about their content. Thus, Plaintiffs' claims may fare better if they sought to impose liability

United States District Court
Northern District of California

United States District Court
Northern District of California

on Meta for failing to warn about fraudulent content[.]" *Calise*, 103 F.4th at 744 (citations omitted). Meta claims that the panel "misread" *Internet Brands* and that the remarks do not constitute the law of the case.

The Court need not resolve this issue because it agrees with Meta that the negligent failure to warn claim fails under the economic loss rule. The economic loss rule was not an issue in *Internet Brands* because the plaintiff suffered physical, not purely financial, harms. *See Internet Brands, Inc.*, 824 F.3d at 852 (holding website could be liable for failure to warn about known rape scheme after user fell victim to known sexual predator on site).

Meta additionally argues that Plaintiffs fail to plead the elements of their failure-to-warn claim. The Court rejects this argument. Plaintiffs allege that Meta did not warn its users of a known risk, precisely the conduct that the Ninth Circuit suggested could give rise to a failure-to-warn claim. Plaintiffs also allege that Meta has a special relationship with Facebook users due to the disparity in control over the online environment.

Because the economic loss rule bars this claim, it is dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Meta's motion to dismiss. The Court dismisses Plaintiffs' claim for negligent failure to warn. It permits the remaining claims to proceed.

Meta shall file an answer within twenty-one (21) days.

The Court HEREBY SETS a case management conference for October 24, 2025, at 9:00 a.m. The parties shall file a joint case management statement by October 17, 2025.

**IT IS SO ORDERED.**

Dated: September 22, 2025

Jeffrey S. White

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CALISE, et al., Plaintiffs, v. META PLATFORMS, INC., Defendant. | Case No. 21-cv-06186-JSW **ORDER GRANTING MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL** Re: Dkt. No. 71 |

Now before the Court is the motion to certify an order for interlocutory appeal filed by Defendant Meta Platforms, Inc. ("Meta"). The Court finds the motion suitable for decision without oral argument and HEREBY VACATES the hearing set for February 6, 2026. The Court has considered the parties' papers, relevant legal authority, and the record in this case and exercises its discretion to GRANT the motion pursuant to 28 U.S.C. section 1292(b).

Meta's motion seeks to certify this Court's order denying Meta's motion to dismiss ("Order") for interlocutory appeal with respect to the following two questions: (1) whether the Terms of Service ("TOS") and Community Standards "impose an affirmative obligation on Meta to combat purported scam advertisements," and (2) whether the Limitation of Liability Clause is unconscionable. (Motion at 5; Opp. Br. at 1.)

A district court may certify an order for interlocutory review under 28 U.S.C. section 1292(b) if (1) there is "a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance

United States District Court
Northern District of California

the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011). Certification for interlocutory appeal should be applied sparingly and only granted in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation. *See, e.g., Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978); *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982); *United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959). The party seeking certification of an interlocutory order has the burden of establishing the existence of such exceptional circumstances. *Coopers & Lybrand*, 437 U.S. at 475. A court has substantial discretion to decide whether to grant a motion for certification. *Valdovinos v. McGrath*, No. C02-1704-CW, 2007 WL 2023505 at *2 (N.D. Cal. July 12, 2007) (citing *Brown v. Oneonta*, 916 F. Supp. 176, 180 (N.D.N.Y. 1996)).

Certification under Section 1292(b) requires that the district court expressly find in writing that all three of the requirements are met. The Court finds that its Order satisfies all three criteria.

First, the questions posed by the request for interlocutory appeal here involve controlling issues of law. "Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.*¸ 321 F.3d 924, 925-26 (9th Cir. 2003). Similarly, the question of whether a contract or a contract clause is unconscionable is a question of law for the court to determine. *See* Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to be unconscionable at the time it was made the court may refuse to enforce the contract"); *Carmona v. Lincoln Millenium Car Wash, Inc.*, 226 Cal. App. 4th 74, 82 (2014) ("[U]nconscionability is a question of law we review de novo.").

Second, there is substantial ground for difference of opinion on the questions of law presented. Whether Facebook's TOS and Community Standards impose on Meta a legally enforceable obligation to combat purposed scam advertisements is a question on which "substantial ground for difference of opinion" exists. 28 U.S.C. § 1292(b). When "reasonable jurists might disagree on an issue's resolution," a "substantial ground for difference of opinion exists" even if other cases do not "directly conflict[] with the district court's construction of the law." *Reese*, 643 F.3d a6 688. However, "[o]ne of the best indications that there are substantial

grounds for disagreements on a question of law is that other courts have, in fact, disagreed." *Rollins v. Dignity Health*, No. 13-cv-01450-THE, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014); *Allen v. ConAgra Foods, Inc.*, No. 13-cv-01279-WHO, 2019 WL 1466889, at *3 (N.D. Cal. Feb. 6, 2019) (concluding that "there is substantial ground for a difference of opinion" in light of "another ruling from this district" reaching a contrary result on "similar" facts). Here, the Court's Order itself acknowledges that reasonable jurists can and have actually disagreed on whether the TOS and Community Standards impose the asserted legal obligations on Meta. (Dkt. No. 62, Order at 5, citing *Long v. Dorset*, 369 F. Supp. 3d 939, 948 (N.D. Cal. 2019), *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), and *King v. Facebook, Inc.¸* No. 19-cv-01987-WHO, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019); Order at 9, citing *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037-38 (N.D. Cal. 2019).) The fact that other judges, within the same district, have approached the same legal question and construed it differently demonstrates that there is substantial ground for difference of opinion on the questions of law presented.

Lastly, the Court is persuaded that interlocutory review will materially advance the current litigation. This prong is closely "linked to" and "overlap[s] significantly with" whether an issue of law is "controlling." *Mauia v. Petrochem Insulation, Inc.*, No. 18-cv-01815-THE, 2014 WL 6693891, at *4 (N.D. Cl. Nov. 26, 2014). "The ultimate question is whether permitting an interlocutory appeal would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Roth v. Foris Ventures, LLC¸* No. 21-cv-04288-YGR, 2022 WL 21777087, at *2 (N.D. Cal. Aug. 19, 2022) (citations omitted); *see also Biederman v. FCA US LLC*, No. 23-cv-06640-JSC, 2025 WL 1266907, at *5 (N.D. Cal. May 1, 2025 (the final prong of Section 1292(b) is satisfied if "the resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings.").) Here, a decision on the two questions of law will materially advance the ultimate termination of this litigation by resolving important threshold legal issues. An appellate decision on the threshold issues will allow the parties to be more informed in their assessment of whether they might prevail, it would render some claims moot and would facilitate settlement discussions.

Thus, the Court finds that the resolution of these threshold legal questions would accelerate resolution of the case. *See, e.g., SEC v. Mercury Interactive, LLC*, No. 07-cv-02822-JF, 2011 WL 1335733, at *3 (N.D. Cal. Apr. 7, 2011) (finding that the final prong under Section 1292(b) is satisfied where appellate resolution "would have a significant effect on the trial of this action, and perhaps upon the parties' efforts to reach settlement").

The Court finds that securing appellate clarity on interlocutory appeal is in the interests of the parties and this Court. In the long run, an appeal of these threshold issues will materially speed the end of this litigation and perhaps aid in similar litigation over Meta's TOS and Community Standards.

Accordingly, the Court GRANTS Meta's motion to certify an order for interlocutory appeal pursuant to 28 U.S.C. section 1292(b). Further, as Meta has represented that it will continue to litigate the case while it petitions the Ninth Circuit Court of Appeals to grant such a review, the Court shall not stay the matter. Rather, the parties are required to inform the Court by joint submission within five court days of resolution of the petition and, at that time, the Court will determine the extent of a stay, if any.

**IT IS SO ORDERED.**

Dated: January 8, 2026

JEFFREY S. WHITE
United States District Judge